UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

John Doe,
Plaintiff,
v.
University of Nebraska,
Defendant.

Civil Action No. 4:25CV3122
    Filed concurrently with:
    Motion for Service

AMENDED COMPLAINT

    Plaintiff John Doe respectfully submits this pro se First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1), filed as a matter of course. Plaintiff seeks relief for sex-based discrimination and retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688.

INTRODUCTION

    This is a civil rights action brought under Title IX, which prohibits sex-based discrimination in education programs or activities receiving federal financial assistance. It is grounded on unlawful sex-based employment discrimination and retaliation. Plaintiff, who was at the time a part-time employee and student at a public university, was denied a salaried promotion on the basis of sex, and thereafter retaliated against for raising concerns of discrimination.

    After lodging internal complaints, Plaintiff faced retaliation in the form of procedurally irregular and selectively applied disciplinary processes, misused to suppress the Plaintiff's grievance. Plaintiff pursued a formal Title IX complaint to address both the sex-based discrimination and the retaliatory misuse of these internal procedures. In response, Plaintiff was subjected to escalating retaliation and harassment, including fabrication and withholding of

documents, misleading communications about grievance procedures, and the circulation of damaging false statements at a key prospective employer within Plaintiff's field.

This retaliation extended into Plaintiff's academic and professional life, culminating in tangible harm to his reputation, employment prospects, and academic standing. Plaintiff was alienated from his academic community and professional field as a result of this ongoing misconduct.

Plaintiff filed a timely complaint of sex-based discrimination with the Equal Employment Opportunity Commission. After the university submitted incomplete and misleading documentation to the Commission, the claim was dismissed. Plaintiff brings this action after receipt of the Equal Employment Opportunity Commission (EEOC) Notice of Right to Sue.

Plaintiff seeks monetary compensation for lost wages, future earnings, emotional distress, reputational harm, or any relief the Court deems just and proper.

JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under Federal Law, specifically Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688.

Venue is proper under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this judicial district.

PARTIES

Plaintiff John Doe is a former graduate student and former part-time research intern at the University of Nebraska. He was enrolled and employed within the university system during the time relevant to this Complaint.

Defendant University of Nebraska is a public institution of higher education located in Lancaster County, Nebraska. The university receives federal financial assistance, therefore subject to Title IX, and operates the academic and employment programs relevant to this case.

FACTUAL BACKGROUND

Plaintiff was a graduate student and part-time research intern at the University of Nebraska during the Fall Semester of 2023. In August 2023, Plaintiff inquired about salaried

research assistantships within his academic program and was informed that a position, managed by a faculty member, would soon become available. After expressing interest, receiving recommendation and submitting his CV, Plaintiff was offered an hourly research internship by that same faculty member, without the benefits that had previously been afforded to female interns in the same position.

Throughout the Fall Semester, Plaintiff performed his hourly research duties satisfactorily. However, when the salaried assistantship became available, and despite clear interest from Plaintiff and another enrolled male student, the faculty member selected a female candidate who was not yet even admitted into the program and therefore ineligible to begin work immediately. When Plaintiff inquired into this decision, he was met with overt sex-based hostility. Shortly thereafter, the faculty member launched a series of coordinated complaints against him to multiple university offices, including the Campus Police, the Equity Office, the Dean's Office, and the Office of Student Conduct, despite the absence of any prior misconduct.

Over the following months, Plaintiff experienced sustained and escalating retaliation. This included the fabrication and selective editing of emails, the exclusion of exculpatory witness testimony, and procedural violations across both the Title IX and disciplinary systems. Notably, before Plaintiff formally filed a Title IX complaint concerning sex-based employment discrimination and retaliatory misuse of university procedures, it was the Title IX Office, housed within the Equity Office, that initially directed the Office of Student Conduct to open an investigation into Plaintiff. This action was taken at the request of Plaintiff's employing faculty member and was done with full knowledge that Plaintiff had raised concerns of sex-based discrimination.

A classmate, acting under the direction of the same faculty member, circulated demonstrably false and professionally damaging statements about Plaintiff to a key prospective employer. Simultaneously, the faculty member was actively soliciting student leaders from Plaintiff's Recognized Student Organization to file complaints against him. The same faculty member created discord between Plaintiff and his classmates by issuing contradictory instructions. The Title IX Office was fully aware of those facts, as Plaintiff proactively documented and reported those issues.

Despite satisfactory performance, Plaintiff's internship was not renewed. And he was subjected to a conduct hearing that relied on biased, stereotype-driven characterizations voiced

by the faculty member rather than objective evidence. This hearing had been initiated following the Title IX Office's directive to Student Conduct and continued even after Plaintiff filed a formal Title IX complaint asserting that the disciplinary process itself was retaliatory. Instead of halting Student Conduct's misuse, the Title IX Office refused to intervene, asserting incorrectly that retaliation-based complaints were not within its purview, an explicit misrepresentation of its own obligations under Title IX. The hearing culminated in mixed findings and led to Plaintiff's removal from his elected student government position, a role he proactively communicated to Student Conduct and the Title IX Office as central to his professional identity and emotional well-being.

The formal Title IX complaint Plaintiff lodged unfolded between Winter 2023 and Summer 2024. During this time, he uncovered multiple irregularities, including the concealment of key evidence. For example, the Title IX Office knowingly allowed the Office of Student Conduct to exclude an exculpatory interview with a female classmate from the evidentiary record while Plaintiff's disciplinary process was unfolding. Plaintiff directly inquired whether additional investigations were being conducted and was explicitly told there were not. This was untrue. The Equity Office had initiated a parallel Title IV investigation and intentionally withheld this information from Plaintiff. Furthermore, the Title IX Office repeatedly dismissed aspects of Plaintiff's complaint without furnishing the evidence used in those dismissals, violating the requirement in 34 C.F.R. § 106.45 to furnish Plaintiff all available evidence for Plaintiff to meaningfully respond to.

Plaintiff's final appeal of the Title IX Office dismissal of his complaint explicitly raised issues of the procedural violations and deficiencies. Nonetheless, the final appeal was denied without any substantive engagement with the points raised.

During Spring 2024, in an effort to correct ongoing retaliation, Plaintiff escalated his complaints beyond the campus level. He contacted officials within the broader university system, including those with the authority to intervene in both the Title IX and Student Conduct processes. These included a senior compliance officer and the university system president. In response, one system official actively facilitated the continued retaliatory actions against Plaintiff, another explicitly refused to act, and the University President failed to offer any response at all, despite receiving a detailed written complaint outlining the discriminatory and retaliatory sex-based discrimination that Plaintiff was facing.

In April 2024, Plaintiff filed a sex-based employment complaint with the Nebraska Equal Opportunity Commission (NEOC), providing documentation and participating in several interviews. The university's response to NEOC materially contradicted documentation previously furnished to Plaintiff, including misrepresentations drawn from the undisclosed Title IV investigation. NEOC, relying heavily on that curated record, issued a no reasonable cause finding. Plaintiff filed for Substantial Weight Review with the EEOC, which ultimately affirmed NEOC's decision. Plaintiff then received a Notice of Right to Sue in federal court in March of 2025.

Through April and May 2025, Plaintiff applied to numerous positions within his professional sector, where he was previously a competitive candidate. He received multiple rejections, some citing implausible rationales, such as lack of minimum qualifications. Two rejections came from the key employer where professionally damaging hearsay had been circulated by a classmate at the behest of the university faculty member. These rejection notices, while outwardly routine and delivered via standard Human Resources (HR) email, were carbon copied to multiple specific HR representatives. The pre-assignment of individual HR staff to handle Plaintiff's otherwise routine applications reflects risk containment behavior. When considered in conjunction with the anomalous rejection patterns and other documented misconduct, these facts support the conclusion that the university's discriminatory and retaliatory treatment has resulted in Plaintiff being blacklisted within his professional sector.

The facts presented establish a persistent pattern of sex-based employment discrimination, institutional retaliation, and long-term harm to Plaintiff's career and reputation. Plaintiff seeks all available relief under the law.

CAUSE OF ACTION

Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688

Plaintiff brings this claim under Title IX of the Education Amendments of 1972, which prohibits sex-based discrimination in any education program or activity receiving federal financial assistance. Defendant, University of Nebraska, as a recipient of such assistance, is subject to Title IX.

The Supreme Court in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), established that monetary damages are available under Title IX for sex-based discrimination. In this case, Plaintiff was subjected to sex-based employment discrimination and retaliatory actions following his efforts to report and challenge such discrimination.

Under *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), a Title IX claim for damages requires actual notice to an official with authority to institute corrective measures, and a response of deliberate indifference. Here, multiple university officials, including those at the Title IX Office, system-level compliance officials, and the University President, received detailed written and verbal notice of sex-based discrimination and deliberately failed to take proper remedial action, instead enabling or ignoring the sex-based harassment and retaliation.

Under *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), a Title IX claim entailing student-on-student sex-based harassment further requires that the institution had knowledge of student-on-student sex-based harassment, responded with deliberate indifference, and that the conduct was so objectively offensive that it deprived the victim of access to educational opportunities. The university had actual knowledge of retaliation and harassment, including the dissemination of false, professionally damaging hearsay by a classmate at a key discipline-applicable employer, and did not act to prevent further harm.

In *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), the Court held that retaliation against someone for complaining of sex-based discrimination is itself sex-based discrimination under Title IX. Plaintiff was subjected to escalating and coordinated retaliation, including institutional cover-up, fabricated disciplinary proceedings, and professional sabotage, for raising internal and external complaints about sex-based discrimination.

As a result of Defendant's violations of Title IX, Plaintiff has suffered loss of back wages, loss of future earnings, emotional distress, reputational harm, and professional exclusion. Plaintiff seeks all appropriate relief under this Count, including compensatory damages for lost wages (back pay), anticipated future earnings (front pay), and non-economic damages arising from emotional distress and reputational harm.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award the following to the extent permitted by law:

    Back Pay: Including lost wages and associated benefits for the period Plaintiff would have served as a salaried research assistant. Had Plaintiff been lawfully promoted, he would have received approximately $25,000 in salary and $10,000 in tuition remission annually, over three academic semesters. This totals approximately $52,500.00 in back pay.

    Front Pay: Plaintiff is currently 38 years old. The median annual salary for Plaintiff's intended profession is $83,720, per the U.S. Bureau of Labor Statistics. Assuming retirement at age 67, Plaintiff faces a loss of 29 working years, amounting to an estimated $2,427,880.00 in future lost earnings.

    Compensatory Damages for Emotional Distress and Reputational Harm: Plaintiff seeks compensation for severe emotional distress, alienation from his profession and academic community, and reputational injury resulting from the university's misconduct. As a reasonable and symbolic valuation, Plaintiff requests $1,062,573.00, the approximate annual salary of the University President.

    Attorney's Fees and Costs: Pursuant to 42 U.S.C. § 1988 and other applicable law, Plaintiff seeks an award of reasonable attorney's fees and litigation costs.

    Such Other and Further Relief as the Court Deems Just: Including relief or injunctive orders as warranted by the facts and law.

Respectfully submitted,
s/John Doe
John Doe, Pro Se
Dated: 07/16/2025