IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JOHN DOE,

Plaintiff,

vs.

UNIVERSITY OF NEBRASKA,

Defendant.

4:25-CV-3122

MEMORANDUM AND ORDER

The plaintiff, John Doe, is a non-prisoner proceeding in forma pauperis. The plaintiff asserts the defendant, the University of Nebraska, discriminated and retaliated against him in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688. He filed his first complaint on May 30, 2025, and an amended complaint on July 16, 2025.

The Court conducted an initial review of the plaintiff's first amended complaint to determine whether summary dismissal was appropriate under 28 U.S.C. § 1915(e)(2). The Court found the complaint failed to state a claim because it did not contain specific enough facts for the defendant to be put on notice of the claims being raised against it. *See* filing 19 at 5. The Court, however, granted the plaintiff leave to amend, so that he could include specific facts about

> the faculty member at the center of Plaintiff's Title IX complaints of discrimination and retaliation, the department where the faculty member and Plaintiff were working, . . . Plaintiff's program of study[,] . . . the salaried University position for which he unsuccessfully applied, the type of position he is allegedly

'blacklisted' from obtaining, his qualifications for either, [and] the comparative qualifications of those who were selected.

Filing 19 at 5-6. The Court also asked for specifics about "what was said, written, or done that was allegedly discriminatory or retaliatory or to whom any false or damaging statements were made." *Id.*

Instead of following these instructions, the plaintiff submitted 124 pages of selectively transcribed emails and other communications, dating from April 7, 2023, to May 12, 2024. The salience of most of these communications is lost on the Court. *Pro se* litigants are not excused from complying with procedural rules, including Federal Rule of Civil Procedure 8, which requires a *short and plain* statement showing the pleader is entitled to relief. *Cody v. Loen,* 468 F. App'x 644, 645 (8th Cir. 2012) (per curiam). Each allegation must be simple, concise, and direct. Instead of providing any factual allegations, the plaintiff provided various emails and conversations from his professors, administrators, and classmates. Based on this complaint, it is difficult, if not impossible, for the Court to determine upon which conduct the plaintiff bases his claim.

Generally, dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend. *Michaelis v. Neb. State Bar Ass'n,* 717 F.2d 437, 439 (8th Cir. 1983). However, upon review of the plaintiff's complaint, and based on the plaintiff's failure to follow the Court's instructions, any further attempts to amend would be futile. Therefore, the plaintiff's complaint is subject to summary dismissal under § 1915(e)(2).

## I. BACKGROUND

From what the Court can tell, the plaintiff was in the "CRP" program at the University of Nebraska. (The plaintiff never explains what that is, but he

appears to mean the Community and Regional Planning program within the University's College of Architecture. *See* Cmty. & Reg'l Plan., Coll. of Architecture, https://architecture.unl.edu/degree-programs/community-regional-planning.) The plaintiff also mentions an "RSO," apparently a group that occasionally met, which he also does not explain. *See* filing 20 at 3.

The story starts with a conversation between the plaintiff and one of his professors, Abigail Cochran. In October 2023, Cochran told the plaintiff, in front of his classmates, she did not like his "confrontational" and "aggressive" behavior. The plaintiff emailed Cochran on October 24, 2023, and told her that her comments could "be a deeply and irreparably stigmatizing way for a male's prescence [sic] to be framed." Filing 20 at 16. Cochran filed various complaints against the plaintiff with the university's internal channels. Later, the plaintiff filed his own complaint against Cochran.

### Cochran's Complaints

Cochran told the department head that she was "increasingly concern[ed]" about the plaintiff's in-class behavior, to the point that she suggested ceasing the plaintiff's in-person attendance in classes for the semester. Filing 20 at 20. Cochran wrote that other students also complained about the plaintiff's behavior. *Id.* The plaintiff had some interpersonal issues with various classmates. In particular, he and "Julie" were in a group in Cochran's class, and Cochran had to intervene a few times. Both the plaintiff and Julie had "strong personalities." *See* filing 20 at 7.

In one instance, the plaintiff edited a group presentation, and Julie complained that he did so without her approval or consent. The plaintiff was reprimanded, and the incident was part of Cochran's complaint against him. But later in the semester, he worked with "Morgan," and Morgan edited his group project, but Morgan was not subject to a complaint or any discipline.

3

Cochran allegedly filed written complaints about the plaintiff with various university departments and channels, apparently the week after the October 23 email. *See* filing 20 at 10, 15. The plaintiff also appears to allege that Cochran filed a complaint on November 13, 2023. Filing 20 at 81. The plaintiff asserts these complaints were because he was male, and because he spoke out against perceived discrimination. He alleges that Julie was also "aggressive," but not similarly subject to formal complaints.

The plaintiff was a research intern for Cochran in the fall 2023 semester. He was paid, but did not receive any fringe benefits like insurance or tuition assistance, though previous interns had received those benefits. He repeatedly asked for by-name attribution on Cochran's project, and drafted a "memorandum of understanding" to that effect that Cochran did not want to sign. *See* filing 20 at 19. The plaintiff repeatedly asked about research assistantships and other paying research jobs with benefits in the CRP program. He was not selected for any position, and alleges there was not a transparent process to select students for those roles.

"SCCS" (whatever that is[1]) investigated the plaintiff, based on Cochran's complaints. He believed he was being retaliated against for issues he had raised with Cochran, and tried to report that conduct to SCCS. He was told SCCS did not investigate those types of claims, and that he should file a complaint with a different office. He appears to allege he was lied to, and various administrators misled him about how to file a complaint against Cochran.

---

[1] Probably the university's Office of Student Conduct and Community Standards, *see* https://studentconduct.unl.edu/.

The plaintiff had a discussion with some university administrators—described as an "informal hearing" regarding the misconduct Cochran alleged about the plaintiff. The plaintiff was emailed an "administrative resolution" on December 18, 2023, resulting from the SCCS investigation. He was found by an administrator to have violated some sections of the university's code of conduct.[2] *See* filing 20 at 52. The administrator's finding was based on the conduct involving the presentation with Julie, and documentation from Cochran that the plaintiff was "belittling students" and had "extremely questionable behavioral conduct." *Id.* The proposed sanctions were: (1) place the plaintiff on probation, where further violations would result in suspension or expulsion, (2) an administrative fee, (3) completing an intervention program, and (4) a reflection letter or video in which the plaintiff would answer six questions. *Id.*

The plaintiff appealed the administrative resolution. His appeals hearing was substantially delayed. Ultimately, after a five hour hearing in late January, the "University Conduct Board" agreed with the administrator's findings and proposed sanctions. *See* filing 20 at 97. The plaintiff was placed on disciplinary probation, which meant he could no longer serve in student government. The plaintiff appears to allege the Board wrongfully relied on Cochran's unsubstantiated comments about his behavior.

The plaintiff then appealed the Board's findings to the "UNL SA Vice Chancellor." Filing 20 at 110. The Vice Chancellor dropped two charges, but kept two others. Filing 20 at 115. The plaintiff was on probation and had to

---

[2] It's unclear, perhaps due to typos in the plaintiff's complaint, what exactly the plaintiff was or wasn't charged with. *See* filing 20 at 115, 97, 52.

pay a fee, but did not have to write a reflection letter or complete a behavioral intervention program. The probation would be reflected in his academic record.

Separate from, but perhaps related to, the SCCS proceeding, the plaintiff received an email from a different administrator on December 21, addressing faculty concerns about his academic behavior. Several other faculty members were copied on the email. The administrator referenced the incident with Julie, and discussed the "proactive measures" the department took to monitor and manage classroom culture, by having senior faculty members sitting in the plaintiff's class. Filing 20 at 55. Still, "[d]ozens of complaints and concerns" surfaced regarding the plaintiff's behavior both in and out of class. Filing 20 at 55-56. The email set forth expectations for the plaintiff's behavior going forward, and provided resources for potential medical conditions, disability services, or counseling and psychological services.

The plaintiff responded, saying the letter failed to articulate any "exact examples" of his inappropriate behavior, and he asked for documentation of the same. Filing 20 at 56. He attached his email to Cochran from October 2023 as evidence that Cochran's complaints about him were retaliatory. He also pointed out that he had excellent grades.

*Plaintiff's Complaints Against Cochran and Others*

The plaintiff filed his own complaint against Cochran with the "IEC" (again, an unclear organization), for retaliation, some time in December 2023. Leslie Shaver was the assigned investigator; she began investigating the plaintiff's allegations on December 11, 2023, and had several conversations with the plaintiff about his concerns. *See* filing 20 at 45. On January 3, 2024, the plaintiff broadened his complaint to include the email from December 21, asserting it was intimidating and defamatory. He accused Cochran and Julie of conspiring to make him look bad. Filing 20 at 58. (Earlier, he also accused

6

Cochran and the SCCS administrator of conspiring against him, *see* filing 20 at 51). The plaintiff's complaint of discrimination, and abetting discrimination, was against seven different individuals.

Shaver emailed the plaintiff a formal notification disposing of some of his formal complaints on January 10. In part, the IEC determined that, to the extent he challenged the inaccuracies in the December 21 email, there was no "adverse action," and no basis to infer that the email, or any other wrong alleged, was done because of the plaintiff's membership in a protected class. Filing 20 at 66. The plaintiff alleges that this was in spite of Cochran's explicit statements in her complaints against the plaintiff that her concerns were based on the plaintiff's sex.

The plaintiff brought additional charges against Cochran based on her failure to sign the plaintiff's memorandum of understanding, and a failure to promote him to a salaried research assistantship. Filing 20 at 73. Shaver was also the investigator for those claims.

Shaver interviewed the plaintiff's classmates and professors. Ultimately, on August 8, Shaver determined that there was not enough evidence to conclude that Cochran discriminated or harassed the plaintiff based on his sex. Filing 20 at 121. The plaintiff appealed that determination, and later received an email "that upheld IEC's dismissal" of his discrimination complaint based on Shaver's report.

The plaintiff also filed a charge of discrimination with the Nebraska Equal Opportunity Commission. His charge was dismissed and he was issued a right-to-sue letter on March 13, 2025. Filing 20 at 123. The plaintiff applied for an unspecified job with "the city," but he did not get it. Filing 20 at 123.

## II. DISCUSSION

As discussed in the Court's earlier order, to state a retaliation claim under Title IX, a plaintiff must allege (1) he took part in a protected activity; (2) suffered an adverse action; (3) a causal connection exists between the two, and, perhaps, that the defendant knew of the protected activity. *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1203-1204 (8th Cir. 2021).

To state a prima facie case for employment discrimination, the plaintiff must sufficiently allege membership in a protected class, that he met the employer's legitimate expectations, suffered an adverse employment action, and under the circumstances, discrimination can be inferred (for example, similarly situated employees outside the protected class were treated differently). *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1058 (8th Cir. 2020); *Libault v. Mamo*, No. 4:22-CV-3096, 2023 WL 3011259, at *7 (D. Neb. Mar. 20, 2023), *aff'd*, No. 23-1802, 2023 WL 6532621 (8th Cir. Oct. 6, 2023).

But courts should consider whether there are lawful, "obvious alternative explanations," for the alleged adverse action. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 946 (8th Cir. 2015). While *pro se* complaints must be liberally construed, *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014), they are still required to allege facts which, if true, plausibly state a claim for relief as a matter of law, *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Determining whether a complaint states a plausible claim is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

8

*Retaliation*

Title IX prohibits public schools from retaliating against a person for complaining of sex discrimination. *Does 1-2 v. Regents of the Univ. of Minn., 999 F.3d 571, 579 (8th Cir. 2021)* (citing *Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 174 (2005)*). The basis of the plaintiff's retaliation claim appears to be his email to Cochran in October 2023. *See* filing 20 at 8. The theory of his retaliation claim appears to be that he sent an email to Cochran, who then retaliated against him by filing false charges of misconduct with SCCS, resulting in his disciplinary probation.

But even generously construed, the email the plaintiff sent to Cochran is not a protected activity under Title XI. The plaintiff alleges, in full, that he:

> emailed Cochran writing that it seemed to the plaintiff that Cochran had "made reference to feeling as though [he] might have expressed a disagreement in a confrontational manner", that the plaintiff "care[d] about [Cochran's] feeling as well as others['] perceptions of [the plaintiff]", that "being perceived in such a manner" could "be a deeply and irreparably stigmatizing way" for a "male's presence to be framed", and that "perhaps [Cochran]" would "be willing to express" her concerns "privately".

Filing 20 at 8 (alterations in original).

In *Jackson*, the Supreme Court determined a plaintiff engaged in protected activity when he "began complaining to his supervisors about the unequal treatment of the girls' basketball team." 544 U.S. at 171; *see also Ollier v. Sweetwater Union High Sch. Dist., 768 F.3d 843, 868 (8th Cir. 2014)* (protected activity where plaintiff complained about Title IX violations to

9

athletic director, sent demand letter regarding Title IX violations, and filed class action). Here, the plaintiff does not allege that he complained about disparate treatment, or discrimination at all. He complained about how he was treated, specifically, and told his professor how that treatment might have consequences in how he is perceived by his classmates (apparently because of his sex). But that's not the same thing as complaining about discrimination.

While the plaintiff alleges disparate treatment in his complaint, there's no clear indication he actually complained of that treatment until after he received the SCCS email about his alleged misconduct. *See* filing 20 at 22. Based on the facts in the complaint, Cochran had already complained about the plaintiff's behavior before he complained about hers. An allegedly retaliatory action that occurs *before* a protected activity cannot be said to have been *caused by* that activity. *See Russell v. TG Mo. Corp.*, 340 F.3d 735, 748 (8th Cir. 2003).

It's unclear, from the plaintiff's complaint, who else is alleged to have retaliated against him. He seems to allege some sort of conspiracy between Cochran, Julie, and other administrators, or perhaps the entire school, to eject him from his graduate program. But again, there's no indication that any of that alleged behavior was caused by any protected activity. Even generously construed, nothing in the complaint supports an inference that the plaintiff was retaliated against for engaging in conduct protected by Title IX.

### Discrimination

The plaintiff also asserts that, because he was a male, he was not offered the same sorts of research positions, nor the same benefits, as his female classmates. He alleges there was an irregular and opaque hiring process for paid research positions, and Cochran made strange sex-related comments about women in the graduate program and in research roles.

But those are the only facts indicating some type of sex-based discrimination. The plaintiff's theory appears to be that one professor, Cochran, didn't like him, and the entire university disciplinary system acquiesced to Cochran's characterizations and allegedly fabricated complaints about the plaintiff—just because he was a man.

The plaintiff's theory is not credible. There are no facts which suggest that the CRP program administration engaged in a pattern or practice of sex discrimination. Based on the facts alleged, it's clear there was a lawful, nondiscriminatory reason that the plaintiff was not promoted or hired to other salaried research positions: he was perceived as confrontational and aggressive by the professor with which he sought those positions. The plaintiff has not identified students who engaged in similar behavior but received assistantships—while Julie and Morgan engaged in similar behavior, they are not alleged to have been given salaried positions.[3]

There is also no credible connection, based on the facts alleged, between the unspecified "city job" for which the plaintiff applied, and any action taken by the university. The plaintiff's allegations are purely speculative, based on a tenuous relationship between someone on the unspecified hiring committee and someone in the CRP program.

To the extent the plaintiff asserts that he was not given certain benefits as a research assistant, but female students were, this is also not actionable based on the facts in the complaint. The Court specifically instructed the

---

[3] Julie is alleged to have been aggressive and confrontational. Morgan is alleged to have edited another student's work. But the plaintiff was *both* seen as aggressive, *and* he edited another student's work. There's no allegation that any student behaved the way the plaintiff did but received better treatment.

11

plaintiff to allege the "comparative qualifications" of students he asserts were selected over him. But the plaintiff's complaint says nothing about those female students' qualifications or experience, or how they compared to his, or their financial situations, or his. There's nothing to indicate that the plaintiff was similarly situated in all respects to the other graduate students that Cochran paid, or wanted to pay, benefits. *See* filing 20 at 2-3.

The facts alleged *might* indicate that the plaintiff was treated unfairly. But there's no basis from those facts to infer that he was treated unfairly because of his sex. The plaintiff has failed to state a claim upon which relief can be granted. He has also failed to comply with the Court's order and the Court's procedural rules. His complaint is subject to summary dismissal under § 1915.

Accordingly,

IT IS ORDERED:

1. This matter is dismissed without prejudice.

2. A separate judgment will be entered.

Dated this 15th day of April, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

12